IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

|  |  |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>BOLLING B. SMITH II,<br><br>Defendant. | **SEALED**<br><br>INDICTMENT<br>Case No. 10 CR 180 BBC<br><br>18 U.S.C. § 371 |

THE GRAND JURY CHARGES:

### COUNT 1

### Conspiracy

1. From in or about August 2000, to on or about January 13, 2006, in the Western District of Wisconsin, and elsewhere, the defendant,

BOLLING B. SMITH II,

knowingly conspired with Brian K. Bowling, named as a co-conspirator but not a defendant herein, and other persons known and unknown to the Grand Jury, to knowingly make false statements on mortgage loan applications for the purpose of influencing the actions of mortgage lenders that were insured by the Federal Deposit Insurance Corporation, in violation of Title 18, United States Code, Section 1014.

### Parties, Persons and Entities

2. At all times material to this conspiracy:

   a. Brian K. Bowling (Bowling) was the President, CEO, and owner of Platinum Concepts, Inc. (Platinum Concepts). Bowling was licensed as a loan originator

by the State of Wisconsin on April 1, 1999.

      b.      Platinum Concepts was engaged in the business of brokering commercial and residential loans. Platinum Concept's employees included loan officers who brokered loans for potential borrowers, loan processors who assembled the loan documents and files for closings, and telemarketers who solicited potential borrowers for commercial loans, home purchase loans, and refinance loans. Platinum Concepts was incorporated in the State of Wisconsin on June 17, 1999. Its offices were located in Madison, Wisconsin.

      c.      Defendant BOLLING B. SMITH II (SMITH) worked at Platinum Concepts from approximately August 2000 to December 2005. Bowling hired SMITH to train new loan officers. Bowling promoted SMITH to Sales Manager and then to Director of Operations. All of the loan officers at Platinum Concepts reported to SMITH. Defendant SMITH was licensed as a loan originator by the State of Wisconsin from March 9, 1998 to November 1, 2005.

      d.      Long Beach Mortgage Company (Long Beach) was a subsidiary of Washington Mutual Bank, an institution the deposits of which were insured by the Federal Deposit Insurance Corporation. Long Beach was in the business of funding residential mortgage loans secured by real estate. The funding of these loans was dependent and conditioned upon borrowers, through their representatives, providing true and accurate information, which met the underwriting standards of the lender.

      e.      Among the types of mortgages it funded, Long Beach processed

"stated income loans." These loans required the borrower to truthfully state their income and assets. However, the borrower was not required to provide documentation (like tax returns and bank statements) to support the numbers. Borrowers qualified for stated income loans based upon their credit score, downpayment amount, and debt-to-income ratio.

### Manner and Means

3. It was part of the conspiracy that Bowling and SMITH worked together to train new loan officers at Platinum Concepts on the preparation of fraudulent stated income loans. Instead of listing a borrower's true income amount on a stated income loan application, Bowling and SMITH taught new loan officers how to create a borrower's income amount based on number of variables, including: desired loan amount, downpayment amount, loan-to-value ratio, debt-to-income ratio, occupation, and job title.

4. It was further part of the conspiracy that Bowling and SMITH caused to be submitted, and submitted, loan applications containing false statements for the purchase and refinance of real estate property, including statements: (a) inflating the true income of applicants; (b) exaggerating assets or understating liabilities; (c) falsifying job titles and length of employment; (d) misrepresenting the existence and/or source of down payment funds; (e) misrepresenting the existence of subordinate financing (commonly referred to as "silent second mortgages"); (f) misrepresenting the applicant's intent to use the home as a primary residence; (g) misrepresenting the

3

applicant's former and current addresses; and (h) concealing the existence of a silent co-borrower on the loan application because of bad credit, but combining the silent co-borrower's gross monthly income with the borrower's gross monthly income.

5. It was further part of the conspiracy that in 2005 J.H. worked as a contract driver for FedEx and desired a $45,000 loan to purchase his own truck and route. He went to Platinum Concepts in July 2005 to help him obtain a loan. J.H. filled out a personal financial statement, truthfully stating that he earned $40,000 as a route driver for FedEx, and his wife earned $28,000 as an office worker. He listed $5,000 in his bank account, and a $5,000 savings bond on the financial statement.

6. It was further part of the conspiracy that Bowling devised a plan to have J.H. engage in a property flip on a home for sale located at 1940 Frawley Drive, Sun Prairie, Wisconsin. The home was listed for $605,000. Under Bowling's plan, J.H. would buy the home for $605,000 and the seller would pay $20,000 from the sales proceeds to Bowling for brokering the sale. Bowling told J.H. he would pay him $15,000 after the sale so that J.H. could buy the FedEx route and pay for part of the truck. Bowling told J.H. he would immediately re-list the home on the market and help J.H. sell it within six months. J.H. would never actually move into the home. Rather, the seller would continue to live in the home and pay J.H.'s mortgage for the first six months.

7. It was further part of the conspiracy that SMITH participated in a meeting with the seller and Bowling at the seller's home where the details of the J.H. property

4

flip scheme were reviewed. SMITH drafted the offer to purchase for J.H. at the listed price of $605,000. SMITH also ordered the appraisal for the home.

8. It was further part of the conspiracy that SMITH assisted J.H. in obtaining a mortgage for $574,750 to buy the home. SMITH ordered the credit report for J.H. and SMITH then solicited mortgage quotes from at least five different mortgage lenders, including Long Beach, which ultimately funded the mortgage.

9. It was further part of the conspiracy that the loan application submitted to Long Beach falsely indicated that: J.H. earned $14,750 a month; had $51,750 cash in the bank; and that the home would be J.H.'s primary residence.

10. It was further part of the conspiracy that SMITH worked with Bowling to obtain a letter from a certified public accountant (CPA) for J.H., which vouched for J.H.'s self-employed status for the previous two years.

## Overt Acts

11. In furtherance of the conspiracy and to accomplish its objectives, the following overt acts were committed in the Western District of Wisconsin, and elsewhere:

    a. On or about December 23, 2005, SMITH requested and caused to be prepared on behalf of Platinum Concepts, a credit report for J.H.

    b. On or about December 27, 2005, Bowling and SMITH caused a CPA to prepare and to fax a CPA letter on the J.H. loan to Platinum Concept's office in Madison.

c. On or about December 27, 2005, SMITH caused to be prepared and faxed Uniform Loan Submission Sheets soliciting mortgage quotes for J.H. for $574,750 to CreveCor Mortgage, Long Beach Mortgage, First Funding Group, Argent Mortgage, and Encore Credit Corporation.

d. On or about January 10, 2006, Bowling caused employees at Platinum Concepts to fax to Long Beach, a Uniform Residential Loan Application (Form 1003) for J.H., which contained materially false information.

e. On or about January 13, 2006, Bowling signed the name of "Bolling Smith" on a Uniform Residential Loan Application, Form 1003, in support of a $574,750 home mortgage for J.H. from Long Beach Mortgage Company. The Form 1003 falsely inflated J.H.'s gross monthly income amount, misrepresented his subordinate financing, and misrepresented his intent to use the home as a primary residence.

(All in violation of Title 18, United States Code, Section 371).

A TRUE BILL

_____
Presiding Juror

_____
John W. Vaudreuil
United States Attorney

Indictment returned ___12/8/10___